IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MICHAEL LUSK, | ) |
|     Plaintiff, | ) |
| v. | ) |
| THE CITY OF MEMPHIS, RASHAD ROSS, both individually and in his official capacity as a SHELBY COUNTY LAW ENFORCEMENT OFFICER, and CORTEZ DUNN, individually and in his official capacity as a SHELBY COUNTY LAW ENFORCEMENT OFFICER, | ) Civ. No. 2:25-cv-02488-SHL-atc |
|     Defendants. | ) |

**ORDER DENYING MOTION TO STAY**

Before the Court is Plaintiff Michael Lusk's Motion to Stay, filed on August 7, 2025. (ECF No. 18.) The Motion, which is unopposed, explains that there is a criminal matter pending against Lusk in Shelby County Criminal Court. To that end, Lusk seeks to stay the proceedings in this case, "including but not limited to, any and all discovery . . . to allow Plaintiff's related criminal matter to be fully concluded, including any and all appeals of same." (Id. at PageID 136.) The Motion is unopposed. (Id. at PageID 137.) For the reasons that follow, the Motion is **DENIED**.

**BACKGROUND**

Lusk brought this action on May 6, 2025. (ECF No. 1.) In his complaint, he asserts that he is a licensed vehicle dealer authorized to purchase dealer-only vehicles from the City of Memphis's impound lot. (Id. at PageID 3.) As the owner of First Performance, LLC, Lusk has purchased more than $1,000,000 worth of vehicles from the City of Memphis over the last

twelve years. (Id. at PageID 5.) On August 24, 2022, Lusk purchased a 2015 Dodge Charger, Scat Pack Edition, from the impound lot. (Id.) Lusk asserts that the vehicle had previously been identified as stolen in MPD's internal electronic database system and/or the National Crime Information Center vehicle recovery management system. (Id.) However, he asserts that the vehicle either was not properly marked as recovered before being putting up for sale at the impound lot, or was not properly inspected to determine if any of its parts were stolen or altered in any way. (Id.)

Lusk immediately sold the vehicle, and by "late Winter of 2023," the vehicle had been sold twice more. (Id. at PageID 6.) Then, in early 2024, the vehicle was towed after its then-owner was pulled over by Memphis Police Department ("MPD") officers. (Id.) An MPD detective then alleged that the vehicle had previously been reported as stolen, according to Lusk. (Id. at PageID 7.)

A warrant for Lusk's arrest was subsequently issued on April 5, 2024, in which he was charged with one count of vandalism, three counts of theft of property, and five counts of altering a motor vehicle's serial number. (Id. at PageID 7.) On May 6, 2024, Lusk turned himself in and, unable to make bond, was incarcerated. (Id.) On May 16, 2024, Lusk, who was still in custody, returned to court and moved to have all of the charges against him dismissed. (Id.) After Lusk's lawyer informed the court that Lusk received documentation at the impound lot proving he was the lawful owner of the vehicle at the time he purchased it, the charges were dismissed. (Id. at PageID 7–8.)

Based on what he characterizes as an unlawful arrest and detention, Lusk asserts Due Process claims for unlawful detention under the Fourteenth Amendment and lack of probable cause to arrest, and constitutional claims based on the City of Memphis allegedly maintaining an

official pattern, practice, or custom of its police deputies violating constitutional rights under the Fourth and Fourteenth Amendments. (Id. at PageID 11–17.)

Although the charges against Lusk related to the alleged unlawful arrest and detention were dismissed, he explains in his Motion that there is a separate, related criminal matter currently pending in Shelby County Criminal Court against him, involving three charges of theft of property and one charge of owning or operating a chop shop, all felonies. (ECF No. 18 at PageID 136.)[1] Lusk asserts that "[t]hese charges directly relate to the charges that were dismissed on March 16, 2024." (Id.) According to Lusk, a conviction in that case "would have a direct impact on Plaintiff's current civil claims in this Court." (Id.)

The criminal charges that remain pending against Lusk were filed on July 13, 2023. According to the docket in that case, the matter was set for disposition on June 26, continued until August 7, and then continued again until September 25, 2025. Lusk filed this case on May 6, 2025, almost two years after he was criminally charged in the pending state matter. (See ECF No. 1.)

## APPLICABLE LAW

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 611, 626–27 (6th Cir. 2014) (quoting Ohio Env't Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div., 565 F.2d 393, 396 (6th Cir. 1977)). A District Court has broad discretion to stay proceedings. (See id. at 627.)

---

[1] That case is captioned State of Tennessee v. Michael Lusk, Sr., C23-03818.

3

"It is clear that nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment," and "there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings." Id. at 627 (citation modified). Ultimately, "district courts have 'broad discretion in determining whether to stay a civil action while a criminal action is pending or impending.'" Id. (quoting Chao v. Fleming, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007)).

> Courts generally consider and balance six factors when contemplating a stay:
>
> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

Id. Beyond these factors, courts "should consider the extent to which the defendant's fifth amendment rights are implicated." Id. (quoting Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995)). The party seeking the stay bears the burden of showing "that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." Id. at 627–28.

## ANALYSIS

Plaintiff argues that decisions from the Sixth Circuit and this Court have previously emphasized "how critical is it for the courts to allow a criminal defendant to maintain his or her right against self-incrimination." (ECF No. 18 at PageID 136.) The cases he cites, however, do not contemplate the circumstances at play here, that is, where a plaintiff in a civil matter seeks to stay the proceedings he initiated. "[F]ew civil cases are brought to a halt because of contemporaneous criminal investigation or charges proceeding simultaneously," and "fewer cases still are brought to a halt when it is a plaintiff seeking a stay of the civil litigation."

4

Woosley v. Marlin Firearms Co., No. CV 04-176-WOB, 2005 WL 8165113, at *1 (E.D. Ky. Mar. 7, 2005) (citations omitted).

The reluctance to grant stays in such circumstances lies in the reasoning that allowing civil litigants to stay matters that they have brought based on an assertion of a Fifth Amendment privilege would be allowing them to use the privilege as a shield and a sword.  See Schafmeister v. NYU Langone Hosps., No. 19CV11875 (VSB) (DF), 2021 WL 2168134, at *4 (S.D.N.Y. May 27, 2021) (explaining that "some courts have held that plaintiffs in civil actions who have initiated the action[s] and forced defendants into court, cannot later invoke the Fifth Amendment privilege to avoid testifying or engaging in other forms of discovery.") (citation modified); see also Gen. Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1213 (8th Cir. 1973) (collecting cases that "emphasize[] that the privilege must not be used as a 'sword and a shield' where affirmative relief is voluntarily sought by a party"); but see Neumeier v. Amica Mut. Ins. Co., No. 21-11269, 2022 WL 1227962, at *1 (E.D. Mich. Apr. 26, 2022) (granting a stay to the civil case brought by Plaintiff when a criminal complaint was issued against him after the filing of the civil suit, as "proceeding simultaneously with both cases may implicate his Fifth Amendment rights as well as his ability to effectively pursue [the civil] action").  Ultimately, "[t]he fact that a plaintiff may be required to waive his Fifth Amendment rights in a civil proceeding he has initiated, or be faced with negative consequences, might not be as intolerable or unjust as would be the case were it a defendant involuntarily haled into court who faced the same dilemma." Woosley, 2005 WL 8165113, at *2.

Lusk's barebones support for the requested stay does little to explain how participating in the parallel civil and criminal proceedings would prejudice him beyond his assertion that, "[s]hould [he] ultimately be convicted of these criminal charges, that action would have a direct

5

impact on Plaintiff's current civil claims in this Court." (ECF No. 18 at PageID 136 (citing Heck v. Humphrey, 512 U.S. 477 (1994).) And those vague assertions are accompanied by a failure to address the factors courts evaluate in granting a stay, leaving the Court to speculate as to the weight to assign each.

As to the first factor, it is unclear to what extent the issues in his criminal case overlap with those presented in the civil case. And, although he has clearly been indicted, it is not clear how soon his criminal matter might be resolved. The third factor, i.e., the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay, is not a good fit for situations where the Plaintiff seeks a stay, as the "factor would appear to be met every time a plaintiff seeks to stay a case he brought." DSG Com. Eco Cleaning Sys., Inc. v. DHL Express (USA), Inc., No. 2:23-cv-02093-MSN-tmp, 2023 WL 11884601, at *3 (W.D. Tenn. July 28, 2023). Finally, all of the remaining factors counsel against granting a stay, as there is little burden on Defendants with proceeding with the case now, rather than later, the Court has an interest in moving the cases on its docket, and the public interest is similarly served by the expeditious resolution of the cases in its courts. Moreover, the public and the courts are best served where the Fifth Amendment privilege is not allowed to be used as both a shield and a sword, as it would be in these circumstances if a stay were granted.

It is true that "[a] valid assertion of the fifth amendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination." In re Morganroth, 718 F.2d 161, 167 (6th Cir. 1983). But where, as here, it is the plaintiff who seeks to stay the civil proceedings he initiated, and he offers "only a broad and unduly vague Fifth Amendment privilege," a stay is inappropriate. See Woosley, 2005 WL 8165113, at *2.

6

For the foregoing reasons, Lusk's Motion to Stay is **DENIED**.

**IT IS SO ORDERED** this 9th day of September, 2025.

                                                s/ Sheryl H. Lipman
                                                SHERYL H. LIPMAN
                                                CHIEF UNITED STATES DISTRICT JUDGE